UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| RONALD W. JONKER, | ) | No. CV 09-3948-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on June 4, 2009, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on June 16, 2009, and July 10, 2009. The parties filed a Joint Stipulation on January 4, 2010, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

/

## II.

## BACKGROUND

Plaintiff was born on May 9, 1956. [Administrative Record ("AR") at 143.] He has completed high school, and has past relevant work experience as an air-conditioning mechanic, cashier, maintenance man, and maintenance supervisor. [Id. at 22, 76, 165-71.]

Plaintiff filed his application for Disability Insurance Benefits on October 24, 2005, alleging that he has been unable to work since June 1, 2003, because of issues with his lower back, shoulders, and right knee. [Id. at 88, 143-47, 157-58.] After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [Id. at 88-92, 93-97, 102.] A hearing was held on October 18, 2007, at which plaintiff appeared without counsel and testified on his own behalf. Both a medical expert and a vocational expert were present, but only the medical expert testified. [Id. at 68-85.] The ALJ concluded the hearing after the medical expert claimed that he did not have any medical records from September 2002 to March 2004. [Id. at 80-84.] A second hearing was held on February 28, 2008, where plaintiff appeared with counsel. [Id. at 41-67.] On April 25, 2008, the ALJ issued a decision finding plaintiff not disabled. [Id. at 13-22.] When the Appeals Council denied plaintiff's request for review of the hearing decision on March 27, 2009, the ALJ's decision became the final decision of the Commissioner. [Id. at 3-5.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.  THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment

in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ concluded that plaintiff did not engage in any substantial gainful activity during the period of time between June 1, 2003 (the alleged onset date of disability), and December 31, 2005 (the date the ALJ determined that plaintiff was last insured for Disability Insurance Benefits purposes). [AR at 18.] At step two, the ALJ concluded that plaintiff has the following severe impairments: "[status post] nondisplaced fracture through the posterior aspect of the left iliac wing, left shoulder impingement syndrome, bilateral facet joint syndrome at L5-S1, and right knee chondromalacia." [Id.] At step three, the ALJ concluded that plaintiff's impairments do not, either individually or in combination, meet or equal any of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. [Id. at 19.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[1] "to perform the full range of medium work[2] as defined in 20 [C.F.R.] § 404.1567(c)" and noted that "[t]he limitations in this residual functional capacity recognize that [plaintiff] improved following his initial injury, physical therapy, and shoulder surgery

---

[1]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2]   "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567, 416.967.

sufficiently to perform the strength demands of medium work." [Id.] At step four, the ALJ concluded that plaintiff, through the date last insured, could perform his past relevant work as a maintenance supervisor and maintenance worker. [Id. at 22.] Accordingly, the ALJ determined that plaintiff is not disabled. [Id.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ improperly terminated the disability analysis at step four of the sequential analysis because he erred in (1) crediting the opinion of an examining physician dated twenty months after the date last insured over the opinions of the treating physician (Dr. Alan M. Lazar), examining physician (Dr. Thomas J. Sabourin), and non-examining physician (Dr. J. Hartman); and (2) rejecting plaintiff's credibility and testimony. [See Joint Stipulation ("JS") at 6, 11, 18.] As explained below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

### A. MEDICAL EVIDENCE

Plaintiff contends that the ALJ improperly considered the medical evidence by crediting the non-retrospective opinion of an examining physician over the opinions of the treating physician, examining physician, and non-examining physician. [JS at 6, citing AR at 21.]

When evaluating medical opinions, the case law and regulations "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." Lester, 81 F.3d at 830; see 20 C.F.R. §§ 404.1502, 416.902. "'The administrative law judge is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, but he cannot reject them without presenting clear and convincing reasons for doing so.'" Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (quoting Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984)); see also Lester, 81 F.3d at 830. However, the ALJ can discredit a physician's opinion if

1 it is conclusory, brief, and unsupported by medical evidence. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

Generally, the opinions of treating physicians are given greater weight than those of other physicians, "because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient." Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); see 20 C.F.R. §§ 404.1527, 416.927. The treating physician's opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [plaintiff's] case record." Id. Even where the treating physician's opinion on disability is controverted, it can only be rejected with "specific, legitimate reasons . . . that are based on substantial evidence in the record." Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). Similarly, the ALJ must provide "'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician" and "specific and legitimate reasons that are supported by substantial evidence in the record" to reject the contradicted opinion of an examining physician. Lester, 81 F.3d at 830-31 (citation omitted). Also, while an examining physician's opinion carries greater weight than a non-examining physician's opinion (Lester, 81 F.3d at 830 (citation omitted)), an ALJ may not ignore "findings of fact made by State agency medical and psychological consultants." Social Security Ruling[3] 96-6p.

In the instant case, the treating physician (Dr. Alan M. Lazar), examining physician (Dr. Thomas J. Sabourin), and non-examining physician (Dr. J. Hartman) each determined plaintiff's RFC to be light work[4] with limited use of his left shoulder. [AR at 196, 201, 250.] Dr. Lazar treated plaintiff beginning on March 8, 2004, until he discharged plaintiff eleven months later on February 8, 2005, by which time he felt plaintiff had reached maximum medical improvement (MMI) even

---

[3] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations" and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[4] Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

6

though plaintiff still needed to avoid heavy lifting. [Id. at 250-58, 260-66.] While treating plaintiff, Dr. Lazar conducted physical examinations, Babinski tests, and ROM tests, referred him to other doctors for his health problems, set him up with therapy, provided him with medicine to be used as necessary, and recommended a home exercise program. [Id. at 250-58, 260-66.] Dr. Sabourin, an examining physician, conducted an orthopedic examination of plaintiff on December 13, 2005, and made findings consistent with Dr. Lazar's opinion.[5] [Id. at 197-202.] Dr. Hartman's non-examining opinion was given 10 days after plaintiff's date last insured and is also consistent with those of the other two doctors. In summary, the medical evidence as of January 10, 2006, is unanimous and substantiated by objective findings.

Almost nineteen months after Dr. Hartman rendered his opinion, on August 6, 2007, Dr. J. Pierce Conaty examined plaintiff and gave an opinion inconsistent with those given by the previous physicians. [AR at 267-71.] He determined that plaintiff can lift and carry 50 pounds occasionally and 25 pounds frequently, can stand and walk for six hours in an eight-hour workday, and can sit for six hours in an eight-hour workday. [Id.] In essence, Dr. Conaty found plaintiff capable of medium level work without identifying any limitations. [Id.]

In the decision, the ALJ acknowledged that Dr. Lazar, Dr. Sabourin, and Dr. Hartman concluded that plaintiff had the capacity for light work with a left shoulder limitation. [Id. at 21.] However, he did not adopt their findings, but instead accepted Dr. Conaty's finding that plaintiff is capable of medium level work. [Id.] In doing so, the ALJ afforded "great weight" to Dr. Conaty's examining opinion, stating that he:

> "finds no basis in the clinical signs and supported subjective complaints that would require limitations to light work . . . [and] also rejects Dr. Thomas J. Sabourin's orthopedic consultative opinion that produced limitations to light work. The claimant's comprehensive subsequent examination produced evidence . . . that supports the conclusion herein that the claimant is able to perform medium work."

---

[5] Dr. Sabourin's opinion documented the results of an extremity examination, neurological examination, and radiographic examination. [AR at 197-201.] He concludes that plaintiff is capable of light-level work and that "[h]is push and pull limitations are equal to the lift and carry limitations[,] . . . has manipulative limitation with the left shoulder[,] . . . [and] can work above with the right arm only frequently." [Id. at 201.]

[Id. at 19, 21.] While the ALJ explicitly rejected Dr. Sabourin's orthopedic consultative opinion, he made no mention of the opinion of Dr. Hartman or the findings of Dr. Lazar.[6] Implicit in the ALJ's decision is that he credited the subsequent examination and opinion of Dr. Conaty over the opinions given by Dr. Sabourin, Dr. Lazar, and Dr. Hartman.

Plaintiff contends that the ALJ erred in failing to support by clear and convincing reasons why he credited the opinion of Dr. Conaty that plaintiff was capable of medium level work over the unanimous opinions of the three other physicians, who limited plaintiff to light work with limited use of his left shoulder. [Id. at 196, 201, 250, 271.]

While a retrospective diagnosis can support an ALJ's RFC conclusion, such an opinion is entitled to less weight than an opinion rendered following a contemporaneous examination. Macri v. Chater, 93 F.3d 540, 545 (9th Cir. 1996) (citing Lombardo v. Schweiker, 749 F.2d 565, 567 (9th Cir. 1984) (per curiam)). In the instant case, Dr. Conaty examined plaintiff more than 19 months after the date plaintiff was last insured. [AR at 267.] Since the relevant inquiry is plaintiff's condition prior to December 31, 2005, Dr. Conaty's opinion is relevant only to the extent it relates to plaintiff's condition within the insured period. See Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984) (evidence of plaintiff's condition subsequent to his date last insured is relevant if "it may bear upon the severity of the claimant's condition" (citations omitted)). Here, the ALJ makes no mention whatsoever in his decision how Dr. Conaty's opinion bears on plaintiff's condition within the insured period.[7]

---

[6] The ALJ did not discuss the weight he placed on Dr. Lazar's opinion or discuss Dr. Lazar's findings. He only cited the inconsistencies between plaintiff's testimony and Dr. Lazar's August 31, 2004, opinion as one reason for rejecting plaintiff's credibility. [AR at 21.]

[7] Defendant argues in the Joint Stipulation that Dr. Conaty's opinion is relevant to the insured period. [JS at 15.] Defendant contends that since plaintiff testified that his back condition deteriorated over time, Dr. Conaty's examination would, if anything, reveal a more severe condition than the condition plaintiff had during the relevant time. [Id.] However, the Court is constrained to review the reasons the ALJ asserts in his decision, not the reasons that defendant later gives. Barbato v. Comm'r of Soc. Sec. Admin., 923 F.Supp. 1273, 1276 n.2 (C.D.Cal. 1996) ("If the decision on its face does not adequately explain how a conclusion was reached, that alone is grounds for remand." (citation omitted)); see Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. (continued...)

The ALJ's reasons for crediting Dr. Conaty's opinion over those of Dr. Lazar, Dr. Sabourin, and Dr. Hartman, to the extent any reasons were explicitly provided, failed to reach the level of specificity required. See Embrey v. Bowen, 849 F.2d 418, 421-23 (9th Cir. 1988). Remand is warranted to consider the medical evidence in light of the opinions of Dr. Lazar, Dr. Sabourin, and Dr. Hartman, as well as the timing and relevance of Dr. Conaty's examination.

**B.     STEP FOUR ANALYSIS**

Plaintiff contends that the ALJ improperly concluded the analysis of his disability claim at step four of the sequential analysis in finding him "not disabled." [JS at 5.]

At step four, the ALJ must determine whether plaintiff's RFC allows him to return to his past relevant work. Lester, 81 F.3d at 828 n.5; 20 C.F.R. §§ 404.1520, 416.920. Plaintiff has the burden of establishing that he is incapable of performing his past relevant work. 20 C.F.R. §§ 404.1512, 416.912; Barnhart v. Thomas, 540 U.S. 20, 25, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003). However, the ALJ must make findings of fact regarding plaintiff's RFC, the physical and mental demands of plaintiff's past work, and whether plaintiff can return to his past relevant work "either as actually performed or as generally performed in the national economy." Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002); Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. Typically, when determining how plaintiff's past relevant work was actually performed, plaintiff "is the primary source for vocational documentation, and statements by [plaintiff] regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work." SSR 82-62. But when determining how the work is generally performed, the ALJ can rely on the descriptions given by the Dictionary of Occupational Titles ("DOT")[8] or a vocational expert. See id.; Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). However, to properly rely on the DOT when the DOT's job

---

[7](...continued)
2003) (citation omitted).

[8]    The DOT is supplied by the U.S. Department of Labor.

description requirements do not include all of plaintiff's exertional and non-exertional limitations, the ALJ must expressly explain in the decision why plaintiff can work despite this divergence between the DOT and plaintiff's limitations. Pinto, 249 F.3d at 847 ("[I]n order for an ALJ to rely on a job description in the Dictionary of Occupational Titles that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation." (citation omitted)). If necessary, the ALJ can rely on the testimony of a vocational expert to support his conclusion if the testimony is based on evidence supported by the record. Johnson, 60 F.3d at 1435 ("an ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation.").

Here, the ALJ found that plaintiff's past relevant work included positions "as an air-conditioning mechanic, cashier, maintenance man, and maintenance supervisor," and concluded that he can perform the work of a maintenance worker and maintenance supervisor, "as generally performed." [AR at 22.] The ALJ used the DOT to define the job of maintenance repairer to be "skilled with the strength demands of medium work" and the job of maintenance supervisor to be "skilled with the strength demands of light work." [Id.]

Plaintiff contends that the ALJ erred during the step four analysis in concluding that plaintiff could perform the work of a maintenance supervisor as it is generally performed according to the DOT. [JS at 11-12.] Citing Valencia v. Heckler, 751 F.2d 1082, 1086-87 (9th Cir. 1985), plaintiff argues that his "past work consisted of a hybrid maintenance supervisor/maintenance worker position performed at the light-to-medium level of exertion," and hence the ALJ erred by "segregat[ing] the particular duties and tasks and classifying [his] past relevant work" as a maintenance supervisor position performed at a light exertional level. [JS at 11-12.] The Court disagrees.

In conducting its analysis, the Court assumes that plaintiff's work as a maintenance supervisor and maintenance worker overlapped in some areas; however, the Court finds that the ALJ did not impermissibly parse out particular job functions and reclassify plaintiff's maintenance supervisor job according to the job's least physically demanding aspect. See Valencia, 751 F.2d at 1086-87. Plaintiff testified that he worked as a maintenance supervisor [AR at 44] and plaintiff's

disability application lists one of his past jobs as "maintenance supervisor." [Id. at 159, 165.] The ALJ properly relied on this information in assessing whether plaintiff can perform his past maintenance supervisor position as it is *generally* performed according to the DOT, even if that is different than how plaintiff *actually* performed that job. Pinto, 249 F.3d at 845 ("[SSRs] name two sources of information that may be used to define a claimant's past relevant work as actually performed: a properly completed vocational report, SSR 82-61, and the claimant's own testimony, SSR 82-4."); see also Byrd v. Astrue, 2009 WL 1351206, at *6-7 (W.D. Wash. May 13, 2009) (the ALJ did not misidentify plaintiff's past work as a maid where her work history report listed that position as past work, and the ALJ could rely on how the job is generally performed according to the DOT, even if that was different from how plaintiff actually performed it).

Nevertheless, the case must still be remanded. The opinions of plaintiff's treating, examining, and non-examining physicians not only assessed plaintiff's RFC as light level, but also limited plaintiff's use of his left shoulder. [AR at 189-96, 197-202, 250-66.] In the decision, the ALJ failed to explain how plaintiff can still perform his past relevant work despite his shoulder limitation. [Id. at 22.] The Court finds that the ALJ's omission in this regard is error because the ALJ must account for all of plaintiff's limitations -- including the shoulder impairment -- if he chooses to rely on a job description from the DOT. See Bartlett v. Astrue, 2010 WL 1540956, *2 (C.D.Cal. April 14, 2010) (the ALJ erred when "he failed to detail the physical and mental demands of Plaintiff's past jobs and did not explain how Plaintiff could still perform those jobs despite his limitations." (citation omitted)); see also Pinto, 249 F.3d at 845 ("In order for an ALJ to rely on a job description in the Dictionary of Occupational Titles that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation."). Remand is necessary because the ALJ's reliance on the DOT without taking into account plaintiff's shoulder limitation was improper.

C. **STEP FIVE ANALYSIS**

Defendant contends that any error made by the ALJ was harmless because plaintiff would still have been found "not disabled" at step five of the sequential analysis. [JS at 17.] The Court disagrees.

At step five, the burden of proof shifts back to the Commissioner to establish that plaintiff is not disabled because he can perform other substantial gainful work available in the national economy. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 996 F.2d at 1257. The Commissioner can meet this burden of proof by either 1) calling a vocational expert to testify at the administrative hearing about whether there are jobs for a person with plaintiff's limitations or 2) employing the Medical-Vocational Guidelines ("Grids") to determine whether an individual is or is not disabled.[9]  The ALJ may apply the Grids "only when the Grids accurately and completely describe [plaintiff's] abilities and limitations." Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985) (citing Heckler v. Campbell, 461 U.S. at 462 n.5).  Here, the ALJ contended that "someone of Plaintiff's age, education, work experience, and light exertional capacity is not disabled pursuant to the Medical Vocational Guidelines." [AR at 17.] In so concluding, however, the ALJ failed to account for the shoulder limitation that Dr. Lazar, Dr. Sabourin, and Dr. Hartman all found to exist in addition to plaintiff's light work limitations. See discussion supra. The ALJ failed to explain why the Grids mandate that plaintiff be found "not disabled" in light of plaintiff's shoulder limitation. This constitutes error. See Jones, 760 F.2d at 998. Since the ALJ neither elicited testimony from a vocational expert nor adequately explained how plaintiff's shoulder limitation impacted his application of the Grids, the ALJ has not met his burden.  Remand is warranted.

**D.     PLAINTIFF'S CREDIBILITY**

Plaintiff contends that the ALJ failed to provide legally sufficient reasons to reject his testimony. [JS at 18, 21.] The Court disagrees.

The ALJ must make explicit credibility findings whenever he discredits plaintiff's testimony. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). The ALJ can only reject a claimant's testimony "upon (1) finding evidence of malingering, or (2) expressing clear and convincing

---

[9] See Heckler v. Campbell, 461 U.S. 458, 461, 103 S. Ct. 1952, 76 L. Ed 2d 66 (1983) ("Prior to 1978, the Secretary relied on vocational experts to establish the existence of suitable jobs in the national economy . . . . To improve both the uniformity and efficiency of this determination, the Secretary promulgated medical-vocational guidelines as part of the 1978 regulations." (citation omitted)).

12

reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); 20 C.F.R. §§ 404.1529, 416.929. Once plaintiff proves an underlying medical impairment, his testimony cannot be rejected "solely because the available objective medical evidence does not substantiate [the] statements." 20 C.F.R. §§ 404.1529, 416.929; Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Smolen, 80 F.3d at 1282. Factors that weigh in determining plaintiff's credibility include plaintiff's daily activities, reputation for truthfulness, work record, and treatment or medication for relieving symptoms. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); 20 C.F.R. §§ 404.1529, 416.929. Other factors include inconsistencies in plaintiff's testimony itself, inconsistencies between plaintiff's testimony and conduct, and testimony from physicians or third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. Id. If the ALJ's credibility determination is properly supported, it is entitled to "great deference." See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

Since the ALJ made no finding that plaintiff was malingering, he was required to justify his credibility determination with clear and convincing reasons. See Benton, 331 F.3d at 1040 (9th Cir. 2003); see also Reddick, 157 F.3d at 722 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." (quoting Lester, 81 F.3d at 834.)). Here, despite finding that plaintiff's medical impairments could reasonably produce the symptoms plaintiff alleged, the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." [AR at 21.]

Specifically, the ALJ supported his credibility determination with the following reasons: plaintiff 1) made allegations of upper extremity weakness that contradicts the medical evidence; 2) made specific complaints about his shoulder that are not credible; 3) had not seen a treating source in over six months; 4) took no medication; 5) had not continued treatment for his knee; 6) was not financially unable to obtain medication or treatment because he qualified for an indigent program; 7) alleged that he is only able to sit for 15 minutes due to pain, but can drive for 45 minutes at a time; 8) did daily activities that are inconsistent with his disability allegations; and 9)

had a California driver's license without restriction that he obtained immediately upon moving from Florida. [AR at 21.] As discussed below, the Court finds that the ALJ properly cited certain reasons -- plaintiff's conservative treatment, daily activities, and inconsistencies between medical records and testimony -- to reject plaintiff's allegations of the nature, severity, and effect of his symptoms.

The ALJ noted that despite plaintiff's testimony that his medical problems limit him to being able to sit for only 15 to 20 minutes, stand and walk for two hours in an entire day, and lift 20 pounds only a few times a day, he is not taking any medication, has not seen a treating source in over six months, and has not had any additional treatment for his knee. [Id. at 52-54.] The ALJ's rejection of plaintiff's credibility based on the conservative treatment he received for his back pain, shoulder pain, and right knee problems, or his failure to seek treatment, was proper. [Id. at 49-52]. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (an ALJ may reject plaintiff's testimony of disabling limitations or pain if plaintiff failed to seek treatment or follow a prescribed course of treatment without a good reason). The ALJ also rejected plaintiff's claim that he did not see a doctor because he did not have the money for health insurance, finding that plaintiff has access to indigent programs and is aware of his access. [AR at 21.] The Court concludes the ALJ properly rejected plaintiff's credibility on those grounds as well. See, e.g., Narkter v. Astrue, 2010 WL 532344, *5-6 (C.D.Cal. Feb. 11, 2010) (ALJ rejected plaintiff's allegation that "he was not able to obtain treatment as he had 'no medical' and gets 'turned down' at hospitals in his area," reasoning that "plaintiff has had access to treatment through County clinics, is aware of such facilities, and demonstrated an ability to access medical care, which has included a range of testing.").

The ALJ also referenced plaintiff's testimony -- i.e., he can help his father in the orchard, he works on his car, and lives alone -- as a reason for finding plaintiff's allegations of his limitations incredible. These reasons are sufficient to conclude that plaintiff's activities are inconsistent with his allegations of only being able to sit for 15 to 20 minutes, stand and walk for two hours in an entire day, and lift 20 pounds only a few times a day. See Thomas, 278 F.3d at 958-59 (inconsistencies between daily activities and testimony is a factor for rejecting credibility); Rollins

1 v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (if the ALJ gives a reasonable interpretation of plaintiff's testimony that is supported by substantial evidence, then it is not the court's role to "second-guess it." (citation omitted)). Finally, as an additional reason to reject plaintiff's credibility, the ALJ referenced plaintiff's testimony that his shoulder has not improved since his surgery [AR at 21, 50], and contrasted that statement with plaintiff's statements to Dr. Lazar on August 31, 2004, that his shoulder was asymptomatic. [Id. at 21.] The Court finds that the record supports the ALJ's assertions. See Thomas, 278 F.3d at 958-59 (inconsistencies in plaintiff's testimony weighs against plaintiff's credibility).

Plaintiff's conservative treatment, the inconsistencies between his daily activities and alleged limitations, and the contradiction between his testimony and his medical records showing no symptoms, are all valid reasons for the ALJ to reject his credibility. Since the ALJ gave clear and convincing reasons for supporting his conclusion, remand is not warranted on this issue.

/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/

## VI.

## **CONCLUSION**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to reconsider the medical evidence, including plaintiff's shoulder limitation, and its impact on the sequential analysis. The ALJ is instructed to take whatever further action that is deemed appropriate and consistent with this decision.

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for reversal, or in the alternative, remand, is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: June 29, 2010

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE